Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1175 | **DATE** | 10/6/2003 |
| **CASE TITLE** | Chow vs. Aegis Mortgage Corp., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] GMAC's motion for summary judgment as to Count I, the only remaining count, is granted. Motion for summary judgment by AEGIS is granted in part and denied in part. The motion is granted as to Count III and denied as to Counts I, II, IV, V, and X. Pretrial order will be due by 11/6/03; and response to any motions in limine by 11/20/03. Pretrial conference set for 12/2/03 at 4:00 p.m. and trial set for 1/6/04 at 9:30 a.m. to be tried when reached for trial. Enter Memorandum Opinion and Order. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | 2 number of notices | | |
| ✓ | Notices mailed by judge's staff. | | OCT 07 2003 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | 92 |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 10/6/2003 | | |
| | | | date mailed notice | | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALVIN F. CHOW, )
)
Plaintiff, )
)
v. )
) No. 01 C 1175
AEGIS MORTGAGE CORPORATION d/b/a/ )
NEW AMERICA FINANCIAL, an Oklahoma )
corporation in good standing, FUTURE )
BANKERS, INC., KATHLEEN HELMS, )
individually, GENE KAPUSTKA, )
individually, and GMAC MORTGAGE )
CORPORATION, )
)
Defendants. )
)

DOCKETED
OCT 7 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Alvin F. Chow filed a ten count complaint against various defendants alleging violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq., the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 1201 et seq., the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq., and the Illinois Loan Brokers Act, 815 ILCS 175/15-1 et seq., as well as breach of contract, unjust enrichment, and common law fraud, all arising out of transactions relating to a residential mortgage. Defendant AEGIS Mortgage Corporation ("AEGIS"), who is named in counts I-V and X, and defendant GMAC Mortgage Corporation ("GMAC"), who is named in count I,[1] now move

---

[1] GMAC was voluntarily dismissed from counts II, IV and V, the only other counts in which it was originally named. (Minute Order of July 2, 2001.)

for summary judgment on those counts. I grant the motion in part and deny the motion in part.

## I. Background

In the summer of 1999, Mr. Chow approached Gene Kapustka about obtaining financing for a residential home purchase. Mr. Chow paid Mr. Kapustka $2,000 to lock in a mortgage rate for ninety days, and later paid an additional $1,500 to lock in the rate for an additional ninety days. In December 1999, Mr. Chow made an offer on a house in Barrington and paid Mr. Kapustka an additional $1,927.50 to extend the locked in rate. Shortly thereafter the real estate contract was cancelled, and Mr. Chow contracted to purchase a different house in Barrington ("Surrey Lane property"). In order to purchase the Surrey Lane property, Mr. Chow needed a loan larger than originally anticipated, and wrote a check to Mr. Kapustka for an additional $2,171. At some point during these transactions, Mr. Kapustka became affiliated with Future Bankers, a licensed Illinois mortgage broker who became Mr. Chow's broker for the mortgage transaction at issue in this litigation. In January 2000, loan application documents were prepared. On March 20, 2000, Mr. Chow closed on the Surrey Lane property. In May 2000, the servicing rights on his loan were sold to GMAC. What occurred during the months between preparation of the loan application documents and closing is the subject of some controversy, and will be discussed as needed below. Essentially,

the issues in this case focus on whether defendants AEGIS and GMAC failed to make certain disclosures as required by law or otherwise acted fraudulently. Additionally, there is an issue as to whether AEGIS paid illegal kickbacks to Future Bankers.

II. Count I: Truth in Lending Act

A. Defendant GMAC

The only parties who can be liable for Truth in Lending Act ("TILA") violations are the original creditor, 15 U.S.C. § 1640, and assignees of that creditor, 15 U.S.C. § 1641. Servicers of consumer obligations are not to be treated as assignees for purposes of imposing liability unless they are also the owner of the obligation. 15 U.S.C. § 1641(f). Here, GMAC argues that it was the servicer of Mr. Chow's mortgage loan, but because it was not also the owner, it cannot be liable as an assignee. Mr. Chow argues that "[t]here are still questions to be resolved as to whether GMAC as an assignee or a servicer has violated TILA because said errors appear on the face of the TILA statements and GMAC profited from the errors and omissions." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 14.) While the question of whether errors appear on the face of TILA disclosures is relevant to determining whether an assignee is liable for those errors, 15 U.S.C. § 1641(a), (e), it is irrelevant to determining whether a party is an assignee or merely a servicer. Here, Mr. Chow admits that GMAC serviced his loan but did not own it. (Pl.'s Resp. to Def.'s

Statement of Facts ¶ 9.) GMAC is thus a servicer of Mr. Chow's mortgage who cannot be held liable as an assignee for the alleged TILA violations. Summary judgment as to GMAC on Count I, the only count remaining against it, is therefore granted.

B. Defendant AEGIS

With respect to AEGIS, TILA requires a creditor to make certain disclosures in consumer credit transactions. 15 U.S.C. § 1638. In its motion for summary judgment, AEGIS focuses on its alleged failure to disclose lock-in fees paid by Mr. Chow to Mr. Kapustka. AEGIS argues that fees paid by Mr. Chow to Mr. Kapustka were not "part of" the AEGIS loan transaction, and therefore any failure to disclose these payments did not violate TILA. One of the disclosures required to be made, however, is the "finance charge." 15 U.S.C. § 1638(a)(3); 12 C.F.R. § 226.18(d). The definition of "finance charge" includes "[b]orrower-paid mortgage broker fees, including fees paid directly to the broker ... whether such fees are paid in cash or financed." 15 U.S.C. § 1605(a)(6). Federal regulations clarifying the definition of "finance charge" indicate that "[f]ees charged by a mortgage broker (including fees paid by the consumer directly to the broker ...) are finance charges even if the creditor does not require the consumer to use a mortgage broker and even if the creditor does not retain any portion of the charge." 12 C.F.R. § 226.4(a)(3). If the fees paid by Mr. Chow to Mr. Kapustka constitute broker fees under the

4

definition of "finance charge," those fees were required to be disclosed under TILA. The statutes and regulations say nothing about whether or not the payment of broker fees has to be "part of" the loan transaction as AEGIS argues. AEGIS has not shown that it is entitled to judgment as a matter of law here, and consequently, its motion for summary judgment is denied with respect to Mr. Chow's TILA claim.

III. Count III: Real Estate Settlement Procedures Act

Mr. Chow alleges that AEGIS violated the anti-kickback provisions of the Real Estate Settlement Procedures Act ("RESPA") by providing Future Bankers with compensation far in excess of the market value of any services provided. Additionally, Mr. Chow alleges various technical violations of RESPA.

A. Anti-Kickback Provisions

Section 8(a) of RESPA states that:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a). Here, it is undisputed that AEGIS paid Future Bankers $10,423.85, which included a yield spread premium of $6,001.60 and loan origination fees of $4,422.25. (Def.'s Resp. to Pl.'s Statement of Facts ¶¶ 27, 29.) Mr. Chow also seeks to have the $9,046.25 that he paid in lock-in fees counted as part of the amount paid to Future Bankers by AEGIS. However, it is irrelevant

whether the amount paid by AEGIS to Future Bankers was $10,423.85 or $19,470.10.

The Department of Housing and Urban Development ("HUD"), the agency authorized to issue rules and regulations interpreting RESPA, see 12 U.S.C. § 2617, has established a two-part test for evaluating the legality of payments made by a mortgage lender to a mortgage broker. Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b), 66 Fed. Reg. 53052 (Oct. 18, 2001).[2] Under the HUD test, the total compensation paid by a lender to a broker must be for goods provided or services performed, and it should be "reasonably related" to the total set of goods provided or services performed.[3] Id. at 53055. Here, it is undisputed that Future Bankers provided at least some services

---

[2] I apply HUD's test here because both parties cited it and I find it informative. In applying this test, I make no judgment as to whether HUD's policy statement is binding on me or not. See Krzalic v. Republic Title Co., No. 02-2285, 2002 WL 31873609, at *7 (7th Cir. Dec. 26, 2002) (Easterbrook, J., concurring) (indicating belief that HUD's RESPA Statement of Policy 2001-1 is not conclusive under Chevron, but instead merely informative or potentially persuasive).

[3] It is important to keep in mind that it is the giving or receiving of a referral fee that is the conduct prohibited by Section 8(a). The fact that compensation received by a broker from a lender is not reasonably related to goods provided or services performed is simply evidence that the compensation was an illegal referral fee; "[h]igh prices standing alone are not proof of a RESPA violation." 24 C.F.R. § 3500.14(g)(2).

to Mr. Chow and AEGIS. (Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 87-90.) Thus, the first part of the HUD test is met. Mr. Chow argues, however, that the fees paid by AEGIS to Future Bankers were not reasonably related to these services. The problem with Mr. Chow's claim is that he provides no evidentiary support for his assertion that the compensation paid by AEGIS to Future Bankers (whether $10,423.85 or $19,470.10) was not reasonably related to the services performed by Future Bankers. AEGIS cites to an affidavit of the Branch Operations Manager of the branch that underwrote Mr. Chow's loan for the proposition that the compensation paid to Future Bankers was reasonably related to the services provided, and consistent with the market value of broker services in that location at that time. (Talsma Aff. ¶ 17.) Mr. Chow, on the other hand, provides no evidentiary support for his contrary assertion that the compensation was not reasonably related to services provided. His statement of facts simply cites to his complaint, which also contains no citation to evidence. (Pl.'s Statement of Facts ¶ 30; Compl. ¶ 59.) While $10,423.85 or even $19,470.10 may seem high relative to the only services undisputedly performed by Future Bankers (verification of Mr. Chow's employment, ordering an appraisal of Mr. Chow's home, and providing a preliminary TILA statement), Mr. Chow provides no evidence of the market value of those services. (Chow Dep. at 314-15) ("Q: With the exception of [anecdotal information from friends you don't

intend to offer as evidence], do you have any other evidence that supports your claim that the market rate Future Bankers obtained was excessive for the services they performed? A: No."). When a motion for summary judgment is made and supported, an adverse party may not rest upon the mere allegations of his complaint, but he must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Mr. Chow simply does not provide evidence sufficient to show that there is a genuine issue as to whether AEGIS provided a referral fee to Future Bankers in violation of RESPA section 8(a).

Section 8(b) of RESPA is equally unavailing for Mr. Chow. That section states that:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b). Here, Mr. Chow presents no evidence that Future Bankers received payments from AEGIS for services not "actually performed." As in the case of section 8(a), it is undisputed that Future Bankers performed at least some services for Mr. Chow and AEGIS, and Mr. Chow presents no evidence that the amounts received for these services were unreasonable (by, for example, presenting evidence of the market value of those services). Mr. Chow simply does not provide sufficient evidence to show a genuine issue of material fact with respect to either RESPA

section 8(a) or 8(b).

B. Technical Violations

Mr. Chow also alleges several technical violations of RESPA. Some of these claims arise out of allegedly misleading and untimely good faith estimates governed by 12 U.S.C. § 2604(c) and its related regulation, 24 C.F.R. 3500.7. Several federal courts have held, however, that there is no private right of action for violations of § 2604. Most notably, the Eleventh Circuit held that "there is no private civil action for violation of 12 U.S.C. § 2604(c), or any regulations relating to it." *Collins v. FMHA-USDA*, 105 F.3d 1366, 1368 (11th Cir. 1997). While the Seventh Circuit has not expressly addressed whether there exists a private right of action under § 2604, it used reasoning similar to the Eleventh Circuit in *Collins* when it held that there is no private cause of action under § 2609 (regulating escrow accounts). *Allison v. Liberty Sav.*, 695 F.2d 1086, 1087-89 (7th Cir. 1982). Both *Collins* and *Allison* applied the Supreme Court's four-part test from *Cort v. Ash*, 422 U.S. 66 (1975) as modified by *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979) to determine whether Congress intended to create a private right of action. *Collins*, 105 F.3d at 1367-68; *Allison*, 695 F.2d at 1088. Both courts found relevant the fact that other sections of RESPA (§§ 2605, 2607, 2608) explicitly provided private remedies, while the statutes at issue in the cases before them did not. *Collins*, 105

F.3d at 1368; *Allison,* 695 F.2d at 1088-89. The Seventh Circuit further found that § 2614 lent support to its finding because that section discusses venue and statute of limitations for private rights of action under §§ 2605, 2607, and 2608 without mentioning any other private rights of action. 695 F.2d at 1089. The Eleventh Cirucit, meanwhile, found relevant the fact that the predecessor to § 2604(c) had explicitly provided a private right of action that had been eliminated when the statute was amended. 105 F.3d at 1368. I find the Eleventh Circuit's holding that there is no private right of action under § 2604 convincing, and believe the Seventh Circuit would agree given its treatment of the issue with respect to § 2609. As a result, I find that there is no private right of action under § 2604. While both sides choose to argue facts such as whether or not Mr. Chow's first loan application was approved triggering the good faith estimate requirement, and whether he acknowledged receipt of various estimates, these facts are beside the point. Even if these facts are disputed, they are not material because Mr. Chow cannot proceed with a private action under § 2604. Thus, summary judgment must be granted.

The technical violations of RESPA alleged by Mr. Chow that do not involve good faith estimates under § 2604 are that AEGIS required private mortgage insurance contrary to the agreement and understanding of Mr. Chow and without notice and disclosure, that AEGIS refused to pay closing costs for not making closing on March

10

17, 2000, and that AEGIS changed the conditions of the loan on the date of closing. Mr. Chow fails to state which sections of RESPA this alleged conduct violates, however. He cites no case law, and my own reading of RESPA reveals no provision under which he could proceed with these claims. Thus, as with his technical violation claims under § 2604, these claims present no genuine issue of material fact. Because Mr. Chow presents no genuine issue of material fact on any of his RESPA claims, AEGIS' motion for summary judgment is granted with respect to Count III.

    IV.   Counts II, IV, and V: Illinois Consumer Fraud Act

Mr. Chow complains that AEGIS' tendering of allegedly inaccurate TILA disclosures (Count II), Uniform Settlement Statement (Count IV), and Good Faith Estimate (Count V) constitute deceptive acts in violation of the Illinois Consumer Fraud Act ("ICFA"). In order to show a violation of the Act, a plaintiff must establish "(1) a deceptive act or practice, (2) intent on the defendants' part that plaintiff rely on the deception, and (3) the deception occurred in the course of conduct involving trade or commerce." *Siegel v. Levy Org. Dev. Co.*, 607 N.E.2d 194, 198 (Ill. 1992). AEGIS argues that Mr. Chow can establish neither a deceptive act or practice nor an intent on AEGIS' part that Mr. Chow rely on any deceptive acts. The requirements of an ICFA claim are not as strict as they sound, however. The deceptive act and intent requirements can be satisfied by innocent misrepresentations

11

of a defendant. *Miller v. Affiliated Fin. Corp.*, 600 F. Supp. 987, 996 (N.D. Ill. 1984) (Shadur, J.) ("[I]t is well established that under the [ICFA] the intention of the [defendant] (his good or bad faith) is not important and a plaintiff can recover under the Act for innocent misrepresentations.") (quoting *Duhl v. Nash Realty, Inc.*, 429 N.E.2d 1267, 1277 (Ill. App. Ct. 1982)). *See also Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 759 N.E.2d 66, 70 (Ill. App. Ct. 2001) (same). To satisfy the intent requirement, plaintiff need not show that defendant intended to deceive the plaintiff, but only that the defendant intended the plaintiff to rely on the (intentionally or unintentionally) deceptive information given. *Gallagher Corp. v. Russ*, 721 N.E.2d 605, 614 (Ill. App. Ct. 1999).

Here, Mr. Chow presents evidence that he received inconsistent and potentially misleading TILA disclosures, uniform settlement statement, and good faith estimates. (Compl. Exs. J, K, N, D, L.) Under the generous "innocent misrepresentation" standard, I cannot say as a matter of law that AEGIS did not engage in deceptive acts under the ICFA. Further, although Mr. Chow will ultimately be required to show that AEGIS intended that he rely on the allegedly deceptive information, summary judgment is "a particularly inappropriate vehicle" for resolving disputes regarding the intent of a party accused of ICFA violations. *Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1131 (N.D. Ill. 1995)

(Castillo, J.) (citing *Lane v. Fabert,* 533 N.E.2d 546, 551 (Ill. App. Ct. 1989)).

AEGIS cites two Illinois cases to support its position that Mr. Chow cannot establish that AEGIS engaged in any deceptive act or intended Mr. Chow to rely on any deceptive act. In *Stern v. Norwest Mortgage, Inc.,* 688 N.E.2d 99 (Ill. 1997), the Illinois Supreme Court held that a mortgage lender did not violate the ICFA when it mistakenly charged a borrower an escrow waiver fee in violation of an Illinois statute. *Id.* at 104. The court stated that the lender "merely made an honest mistake concerning the interpretation of a statute that had yet to be construed." *Id.* The holding in *Stern* that the "honest mistake" of misinterpreting a vague statute did not violate the ICFA does not affect the general rule that innocent misrepresentations may be violations of the ICFA, and AEGIS does not contend that it made any such honest mistake of interpretation anyhow. AEGIS also cites *Krause v. GE Capital Mortgage Service, Inc.,* 731 N.E.2d 302 (Ill. App. Ct. 2000). In that case, the court affirmed summary judgment in favor of a lender on an ICFA claim, finding that the lender did not conceal, suppress, or hide any material facts, and that the plaintiffs could not point to any evidence of the lender's intent to deceive plaintiffs or to have them rely on some undisclosed or hidden material fact. *Id.* at 311-12. In that case, however, the undisputed record indicated that the fees at issue had been

13

disclosed before plaintiffs chose to incur them. *Id.* The record here is not so clear.

AEGIS also argues that Mr. Chow's ICFA claims should be barred by the doctrine of unclean hands. Under Illinois law, unclean hands is an equitable remedy not applicable to claims for monetary relief. *RIV VIL, Inc. v. Tucker,* 979 F. Supp. 645, 659 (N.D. Ill. 1997) (Bucklo, J.) (citing *American Nat'l Bank & Trust Co. v. Levy,* 404 N.E.2d 946, 948-49 (Ill. App. Ct. 1980)). Here, Mr. Chow's ICFA claims seek only money damages. Unclean hands thus does not bar Mr. Chow's ICFA claims here. Summary judgment as to counts II, IV, and V is therefore denied.

V.  Count X: Common Law Fraud

Mr. Chow's common law fraud count makes four claims against AEGIS: that it purposely provided multiple good faith estimates and TILA statements in an untimely manner in order to conceal the true terms of the loan; that it purposely provided multiple and contradictory TILA statements that falsely state the annual percentage rate, finance charge, amount financed, total of payments and payment schedule in order to conceal the true terms of the loan and the amounts Mr. Chow would pay; that it provided good faith estimates and a uniform settlement statement that purposely omit material facts including disclosure of a yield spread premium, lock-in fees, loan origination fees, and private mortgage insurance; and that it falsely represented to Mr. Chow that he

14

would receive a loan with the principal amount of $231,600 but at closing provided a loan of $252,700. (Compl. ¶ 120.) Under Illinois law, there are six elements of a common law fraud claim. Ultimately, a plaintiff must show that 1) defendant made a false statement of material fact, 2) defendant knew or believed the statement was false, 3) plaintiff had a right to rely upon the statement, 4) plaintiff did rely on the statement, 5) defendant made the statement for the purpose of inducing plaintiff to act, and 6) plaintiff's reliance led to plaintiff's injury. *Elson v. State Farm Fire & Cas. Co.*, 691 N.E.2d 807, 816 (Ill. App. Ct. 1998). Here, AEGIS argues that Mr. Chow cannot meet his burden with respect to three elements. First, AEGIS argues that because it did not know that Mr. Chow had paid lock-in fees to Mr. Kapustka, disclosure documents omitting lock-in fees cannot constitute statements known or believed to be untrue. Second, AEGIS argues that because Mr. Chow knew at the time he received disclosure statements that the lock-in fees would not be disclosed, he had no right to rely on the omission of lock-in fees from those statements. Third, AEGIS argues that in light of his knowledge, Mr. Chow cannot credibly contend that he did in fact rely on the omission.

Although common law fraud is more narrow than the ICFA, *id.*, and plaintiff is ultimately required to prove common law fraud by clear and convincing evidence, *Kinsey v. Scott*, 463 N.E.2d 1359,

1364 (Ill. App. Ct. 1984), Mr. Chow withstands summary judgment here. While AEGIS may be correct that Mr. Chow was not entitled to and did not in fact rely on the omission of lock-in fees from disclosure because he knew they were not going to be included (Def.'s Statement of Facts ¶ 35), it fails to address his other fraud claims except to say that they lack factual basis and that Mr. Chow has not established any intent to deceive. (Def.'s Reply Mem. in Supp. of Mot. for Summ. J. at 15.) AEGIS' assertion that the claims lack factual basis is not enough to defeat summary judgment here, however. Additionally, as in the statutory fraud claims, a determination of intent in the common law fraud claim is better left to the trier of fact. Summary judgment as to Mr. Chow's common law fraud claims is therefore denied.

## VI. Conclusion

With respect to defendant GMAC, summary judgment as to Count I, the only count remaining against it, is GRANTED. With respect to defendant AEGIS, summary judgment is GRANTED as to Count III, and DENIED as to Counts I, II, IV, V, and X.

ENTER ORDER:

*Elaine L. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: October 6, 2003

16